## JOHNSON v. COMMERCIAL NAT. BANK IN SHREVEPORT (JOHNSON, Intervener).

### No. 5488.

Court of Appeal of Louisiana.
Second Circuit.

July 19, 1937.

John B. Files, of Shreveport, for appellant S. D. Johnson.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellant Mrs. Mollie O. Johnson.

Lee & Lee, of Shreveport, for appellee.

HAMITER, Judge.

Plaintiff alleges that he has on deposit to his credit, subject to check, in the Commercial National Bank in Shreveport, the sum of $1,312.17; that payment of his checks drawn on that account have been refused by the bank; and that such refusal has caused damage to him. He prays for judgment against the bank for $1,312.17, being the balance of the deposit, and further judgment of $650 for damages as attorney's fees, impairment of credit, inconvenience, and embarrassment.

In its answer defendant admits the existence of the credit in plaintiff's account, as alleged, and that it refused payment of the presented checks, but denies that he is the owner of the deposit. Further answering, it avers receipt of a letter dated January 17, 1936, from Mrs. Mollie O. Johnson in which she gave notice that the funds in the account belonged to her; that it has no interest in the deposit; and that it stands ready to make payment thereof to either claimant upon the proper establishment of ownership.

A petition of intervention was filed in the cause by Mrs. Mollie O. Johnson. She asserts ownership of the money on deposit under the allegation that it "represents the proceeds of the sale of 23 bales of cotton raised on intervenor's separate and paraphernal property under her separate administration and represents the proceeds of drafts purporting to have been drawn by intervenor as seller of said cotton, dated at Mansfield, Louisiana, October 19, 1935, payable on demand to the order of American National Bank, directed to C. L. Graves, Keatchie, Louisiana, said drafts being wrongfully drawn by S. D. Johnson or L. B. Johnson and having been wrongfully deposited by S. D. Johnson, plaintiff, for his account in the Commercial National Bank in Shreveport, Louisiana, on or about October 22, 1935." She further alleges that she did not sign the described instruments. Her prayer is that plaintiff's demands be rejected, and that she be decreed the owner of said deposit.

Plaintiff excepted to the petition of intervention as disclosing no cause and no right of action. The exception was overruled. He then answered with a denial of intervener's claim to ownership of the deposit, and affirmatively averred as follows:

"6. Further answering in the affirmative your respondent avers that he furnished intervenor, Mrs. Mollie O. Johnson, and her husband, L. B. Johnson, food, clothing, cash and supplies beginning August 3, 1934, up to and inclusive of January 22, 1936, for their use and for the use of their family, and for the purpose of farming and making crops on property belonging to the said Mrs. Mollie O. Johnson and/or her husband, L. B. Johnson, and attached hereto is an itemized statement showing the

advances made by plaintiff to intervenor and the payments thereon by said intervenor and her husband, L. B. Johnson, which is made a part hereof and marked Exhibit 'A' for identification.

"7. Respondent further avers that he was a depositor of the Commercial National Bank in Shreveport during the time of said operations, to-wit, August, 1934, up to and inclusive of April 4, 1936, and your respondent attaches hereto a statement of the account furnished by the Commercial National Bank showing said account from April 18, 1935 up to and inclusive of April 4, 1936, which is annexed hereto and marked Exhibit 'B' for identification.

"8. Respondent further avers that said credits shown on said statement were made by L. B. Johnson for himself and as agent and representative of M. O. Johnson, with the knowledge, consent and approval of M. O. Johnson, intervenor herein.

"9. Respondent further shows that during the month of October, 1935, the said L. B. Johnson representing the said intervenor herein gave two drafts to your respondent, one for $1031.07 and the other for $227.45 on C. L. Graves, Keatchie, Louisiana, which sums were credited to the account due by intervenor to your respondent and since said drafts or checks were paid to your respondent he has paid out to intervenor or for her account more than seventeen hundred dollars, as shown by the account hereinabove referred to and attached, leaving a balance due by intervenor to your respondent in the full sum of Twenty-four hundred seventy-one and 46/100 Dollars."

A trial of the merits resulted in a judgment in plaintiff's favor against defendant, Commercial National Bank in Shreveport, in the sum of $1,207.27, with legal interest from judicial demand until paid, and all costs of the main demand. There was also judgment in favor of intervener against the plaintiff and defendant in the sum of $104.90 with cost of the intervention.

Appeals were prosecuted by both plaintiff and intervener.

Counsel for plaintiff has argued earnestly and at length in behalf of the exception of no cause and no right of action directed at intervener's petition. He contends that the relationship beween plaintiff and defendant is merely that of creditor and debtor and that Mrs. Johnson is not author-

ized in law to intervene in this proceeding. The view which we take on the merits, and hereinafter express, makes unnecessary a decision and discussion of this phase of the case.

The record discloses that on September 18, 1935, plaintiff had on deposit in the Commercial National Bank in Shreveport, subject to check, the sum of $2,146.97. This balance was increased on October 22, 1935, by a deposit of $1,408.52, which included two bills of exchange totaling the sum of $1,258.52, and bearing the name of Mrs. L. B. Johnson, seller, and that of C. L. Graves, acceptor. One of these instruments was in the amount of $227.45 and carried the notation of: "Account four bales cotton this day sold to C. L. Graves which cotton he holds for account the American National Bank, Mansfield, Louisiana, and subject to their order." The other was for $1,031.07, and the notation thereon was identical with the exception that 19 bales of cotton were listed. These bills of exchange had been delivered to plaintiff by his son, L. B. Johnson, who at that time was the husband of intervener herein, Mrs. Mollie O. Johnson.

For a number of months subsequent to the date of the above-described deposit, plaintiff's bank account was active. Sums added thereto during the months of November and December, 1935, increased the balance to $4,477.43. Thereafter numerous withdrawals were made with a resultant decrease in the amount standing to plaintiff's credit.

On January 17, 1936, Mrs. L. B. (Mollie O.) Johnson addressed a communication to defendant in which she called attention to the two instruments in question and stated:

"These purported drafts, as aforesaid, represent the purchase price of my cotton and were wrongfully handled, endorsed by and deposited to the account of S. D. Johnson in your bank. I desire, therefore, to notify you that the aforesaid amount of $1,031.27 and $227.45 so wrongfully deposited to the account of Mr. S. D. Johnson belongs to me, and that I do hereby make formal claim thereof and demand upon you for it."

Thereupon, defendant informed plaintiff by letter of the notice received from Mrs. Johnson, and requested that he refrain from checking against the fund of $1,258.52, which was being held against his account, until proper court order releasing it had been furnished.

On April 27, 1936, a check was drawn by plaintiff on defendant for $1,312.17, this representing the balance of his account at that time, payable to the First National Bank of Shreveport. It was deposited with the latter bank, but when presented to the drawee for collection, payment was refused. Several months thereafter this suit was instituted.

Our attention is directed by counsel for intervener to the fact that the bills of exchange were payable to the order of the American National Bank of Mansfield, La., and were never indorsed by that institution. It is then argued that in the absence of such indorsement the instruments did not become negotiable and that they were erroneously accepted by defendant bank and credited to plaintiff's account. This argument, we think, is unavailing to intervener. She prays in her petition of intervention merely that she be decreed the owner of the balance standing to plaintiff's credit and entitled to withdraw it. Obviously, in seeking that relief she is not entitled to urge informalities that might have existed or arisen in connection with the depositing of the instruments for collection and the collecting thereof.

For many years Mrs. Mollie O. Johnson and her husband, L. B. Johnson, were engaged in operating a number of farms in East Texas and West Louisiana. The community existing between them owned some of these, others belonged to plaintiff, S. D. Johnson, while one was the separate and paraphernal property of intervener and was in the main managed by her. The supplies and provisions necessary for the operation of these places were obtained from a general mercantile store which was owned and managed jointly by the husband and wife. In the year 1932, L. B. Johnson was adjudicated an involuntary bankrupt, and thereafter all farming, business, and store matters were handled in the name of Mrs. Mollie O. Johnson for convenience.

Usually the cotton produced from all farms was placed together after ginning and baling, and was sold and collected for by L. B. Johnson. No protest with reference to this arrangement was ever voiced by Mrs. Johnson until subsequent to the sale of the 23 bales which form the basis of the intervention in this suit.

Mr. C. L. Graves testified that he purchased from L. B. Johnson the 23 bales of cotton and gave him the two accepted bills of exchange in payment therefor. On the day of his purchase, or the preceding day, Mrs. Johnson was on the gin yard or lot when he examined the cotton. During previous years he had bought cotton from Mr. and Mrs. Johnson, and all such purchases had been handled through Mr. Johnson in a similar manner and without any protest from intervenor.

According to the testimony of L. B. Johnson, he presented the two instruments to his wife who affixed her signature thereto in his presence. She then returned them to him, and they were delivered to his father to apply as a credit on an indebtedness owed to him. The signature of Mrs. Johnson was necessary because all cotton raised by her and her husband was under a government contract carried in her name. Only two bales of the cotton involved in the Graves sale belonged to the separate estate of Mrs. Johnson.

Intervener emphatically denies having signed the bills of exchange. She states that she knew nothing about them at the time of their execution. The handwriting expert testified, however, that the signatures of the seller on those instruments were made by the same person who indorsed a certain insurance check which was filed in evidence, and Mrs. Johnson admitted having executed that indorsement. Also, she voices a denial of plaintiff's claim that he furnished food, clothing, cash, and supplies to her and her husband, and states that she had no knowledge of any obligation owed by them to plaintiff. In opposition to this is the testimony of her husband and of plaintiff, and this is corroborated by numerous cancelled checks issued by plaintiff and found in the record.

Although Mrs. Johnson testified that 23 bales of cotton were grown on her separate property and that the two bills of exchange were given in payment of these, she was unable to positively identify the 23 bales covered by the sale as being from her land.

In reaching a decision herein, it must be remembered that this is not a controversy between a wife and husband for the settlement of the community estate. It is a contest between a depositor or creditor of a bank and a third person who is making an adverse claim to the deposited fund. Clearly, in this case the burden of proof rests with the adverse claimant. For recovery to be permitted intervener she must establish that the cotton for which the instruments were given belonged to her separate estate, that she did not consent to

its sale to Graves, and that she neither signed the bills of exchange nor authorized their delivery to plaintiff in payment of an indebtedness owed to him by her and her husband. The record as made up compels the conclusion that the burden imposed on her has not been discharged. In this connection, it may be stated that for years L. B. Johnson was permitted and authorized by intervener to sell the cotton grown on her separate property and collect therefor, and to obtain from plaintiff financial assistance in the operation of the store and their several farms and to settle therefor. The sale of the 23 bales to Mr. Graves occurred on or about October 19, 1935, and Mrs. Johnson, according to her testimony, discovered on or about November 22, 1935, that the cotton had been disposed of. Yet she did not protest and made no effort to seek payment therefor until subsequent to a separation between her and her husband which took place in the early part of January, 1936, and later culminated in a divorce.

The record contains a written agreement executed by counsel for plaintiff and defendant to the effect that no judgment shall be rendered in this cause against the Commercial National Bank in Shreveport for attorney's fees or damages.

For the foregoing reasons, the judgment in favor of plaintiff and against the defendant is amended by increasing the amount awarded to the sum of $1,312.17, and as amended it is affirmed. The judgment in intervener's favor is reversed and set aside and her intervention is dismissed. Intervener shall pay all costs of this court and also the costs of the intervention in the trial court.